```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  UNITED STATES OF AMERICA,                                 :
                              Plaintiff,                    :    92 Crim. 869 (LGS)
                                                            :
                  -against-                                 :    INDICATIVE RULING
                                                            :
  ROBIN SCOTT TELLIER,                                      :
                              Defendant.                    :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Defendant, a sixty-one-year-old inmate at FCI Schuylkill, moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). The government opposes the motion. Because Defendant has appealed a decision denying his request for resentencing, the Second Circuit currently has jurisdiction over Defendant's sentence. Therefore, this ruling is made as an indicative ruling under Federal Rule of Criminal Procedure 37(a)(3). For the reasons discussed below, the Court indicates that, if it had jurisdiction, it would grant Defendant's motion for a sentence reduction to time served.

## I.     BACKGROUND

Defendant has been incarcerated for almost three decades since he was thirty-one years old. Defendant was the primary leader of a criminal organization known as the "Tellier Organization" that operated in the tri-state area at least through the late 1970s through the early 1990s. Defendant's incarceration began when he was arrested and detained in February 1992 on state larceny charges. In 1994, Defendant was convicted of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), a substantive violation of RICO, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951, using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §

924(c), possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g), interstate transportation of stolen property in violation of 18 U.S.C. § 2314 and conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371. *Tellier v. United States*, No. 20 Civ. 422, 2021 WL 4556239, at *1 (S.D.N.Y. Oct. 5, 2021). The jury found that Defendant had committed all of the charged racketeering predicate acts, which included murder, attempted murder and robbery. *Id.* Defendant's sentencing was subject to the 18 U.S.C. § 924(c) "stacking" rules and mandatory sentencing guidelines. In November 1994, Defendant was sentenced to life imprisonment, four consecutive terms of imprisonment of twenty years, and concurrent terms of imprisonment of twenty years, ten years and five years. *Id.*

On direct appeal, the Second Circuit affirmed Defendant's conviction in 1996, and the Supreme Court denied certiorari. *United States v. Tellier*, 83 F.3d 578, 579 (2d Cir. 1996), *cert. denied*, 519 U.S. 955 (1996). Defendant's initial habeas petition pursuant to 28 U.S.C. § 2255 was denied in 2006. *Tellier v. United States*, No. 97 Civ. 7897, 2006 WL 2135785, at *1 (S.D.N.Y. July 31, 2006). In 2010, Petitioner attempted to file a second habeas petition, which the Second Circuit denied. *Tellier v. USP Canaan Warden*, No. 10-5245, Dkt. No. 18 (2d Cir. Mar. 16, 2011). In 2019, the Second Circuit granted Defendant leave to file a successive § 2255 petition on the ground that his Hobbs Act robbery conspiracy convictions could no longer serve as predicates to his § 924(c) convictions in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). *United States v. Tellier*, No. 16-1904, Dkt. No. 50 (2d Cir. Nov. 5, 2019). Defendant's successive § 2255 petition was granted in part and denied in part. *Tellier*, 2021 WL 4556239, at *1. Defendant's § 924(c) convictions were vacated, but the court declined to resentence Defendant. *Id.* at *6. On November 30, 2021, Defendant filed a notice of appeal of the court's order declining to resentence him. Notice of Appeal, *Tellier v.*

*United States*, No. 21-2951 (2d Cir. Nov. 30, 2021), Dkt. No. 1.  On February 4, 2022, Defendant filed a motion in the appellate court for a certificate of appealability, which remains pending.  Mot. for Certificate of Appealability, *Tellier*, No. 21-2951 (Feb. 4, 2022), Dkt. No. 23.

On December 17, 2021, Defendant filed the instant motion for sentence reduction, with letters of support from more than thirty family members, friends and current and former inmates.  The government opposes the motion.

II.     **STANDARD**

Defendant moves for a reduction of his term of imprisonment under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act of 2018.  Under that provision, a court may reduce a sentence upon a finding that (1) an inmate exhausted his administrative remedies by requesting relief from prison authorities; (2) "extraordinary and compelling reasons warrant such a reduction" and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A); *see also United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021).  The most closely relevant United States Sentencing Guidelines policy statement counsels that a reduction is not proper unless "the defendant is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).[1]  Under the First Step Act, a court may exercise its "discretion in determining what are extraordinary circumstances."  *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020).  The defendant

---

[1] This Policy Statement applies to sentence reductions "[u]pon motion of the Director of the Bureau of Prisons" and permits a sentence reduction if the court finds: "(1) (A) extraordinary and compelling reasons warrant the reduction; or (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned; (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement."

bears the burden of showing he is entitled to a sentence reduction. *United States v. Jones*, 17 F.4th 371, 375 (2d Cir. 2021). If the defendant establishes extraordinary or compelling circumstances, a court must still consider the § 3553(a) sentencing factors "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also Keitt*, 21 F.4th at 71. Those factors include "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71.

### III.   DISCUSSION

The parties do not dispute that Defendant has exhausted his administrative remedies. For the reasons discussed below, the Court finds that extraordinary and compelling circumstances warrant a sentence reduction, that Defendant is no longer a danger to the safety of any other person or to the community and that the sentencing factors set forth in § 3553(a) weigh in his favor.

#### A. Extraordinary and Compelling Circumstances

Defendant has shown extraordinary and compelling reasons that justify a sentence reduction to time served. "[A] district court's discretion in this area —as in all sentencing matters—is broad." *Brooker*, 976 F.3d at 237. "Where no single factor alone may justify

release, the total circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v. Resto*, No. 8 Cr. 757, 2021 WL 1109467, at *2 (S.D.N.Y. Mar. 23, 2021) (internal quotation marks omitted). Although "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason," it is a factor that district courts may consider in deciding whether to reduce a sentence. *Brooker*, 976 F.3d at 238. Here, Defendant's rehabilitation, severe prison conditions and duration of his sentence already served together satisfy the extraordinary and compelling standard.

The weight of evidence of Defendant's rehabilitation is remarkable, especially given his life sentence. Since 1994 when he was sentenced, Defendant has been a model inmate, committed to self-improvement and helping others inside and outside his prison community. During his incarceration, Defendant has completed his GED, a 915-hour paralegal program, over forty vocational and educational programs, 900 hours of religious courses, has become a certified drug and alcohol treatment specialist, taken several college courses and diligently studied the law. In addition to his educational pursuits, Defendant has held numerous work details, maintained good work performance evaluations, and dedicated substantial time and effort to creative endeavors such as screenwriting, film, novel writing and art. Defendant's commitment to self-improvement is reflected in the BOP Progress Report, which highlights his positive rapport with supervisors, good work performance evaluations, active participation in programming and commitment to personal growth.

While incarcerated in some of the country's most dangerous facilities, Defendant incurred only two minor disciplinary infractions for (1) mailing a letter to be sent to a third party and (2) using another prisoner's phone code. Courts have granted compassionate release on similar disciplinary records. *See, e.g.*, *United States v. Ramirez*, No. 98 Cr. 927, 2021 WL

5233512, at *8-10 (S.D.N.Y. Nov. 10, 2021) (granting compassionate release motion where defendant completed significant number of hours of accredited programs and committed four minor infractions while incarcerated).

As a "jailhouse lawyer," Defendant successfully overturned two of his own convictions and has served as an advocate for numerous other inmates. Many current and former inmates stated in letters that Defendant never turned away anyone who sought his legal assistance and accepted nothing in return for his services, which inmates report is uncommon in the prison environment. One individual noted that Defendant used his own prison income and was charged by the minute when he drafted a motion on his email account for another inmate. Defendant has achieved some success through his advocacy -- he successfully lobbied for Catholic mass services at two facilities and an eye surgery for one inmate, vacated a fellow inmate's convictions, obtained certificates of appealability and helped another achieve compassionate release. Defendant's former lawyer was so impressed with his legal acumen that he has offered to provide some type of paralegal employment for Defendant in the event he is released.

Friends, family and fellow inmates consistently describe Defendant as a dedicated father, loyal friend and role model. All reports highlight his extremely positive outlook on life despite his difficult circumstances. As one fellow inmate commented, Defendant "lives his life as if he goes home tomorrow." Younger inmates view him as a mentor who has guided them away from bad habits and criminal tendencies, and they attribute their successful rehabilitation to his positive influence. He is regarded as a "second father" and "uncle" by several of his friends' and family members' children, as he steers them in the right direction by emphasizing the importance of education, avoiding drugs and discouraging them from making the choices he made in his criminal pursuits. Friends and family who submitted letters almost universally vowed to support

Defendant in the event of his release, including by providing employment, financial support, access to healthcare and a place to live.

Defendant's generosity and selflessness was described in many letters, including that Defendant uses his prison income to donate to charities, sends cards and gifts to family and friends and, according to many, never misses a birthday or special occasion. On one occasion, Defendant alerted staff to a medical emergency involving an unconscious inmate. Defendant's quick and conscientious actions saved the man's life but could have put Defendant at risk because, as one inmate noted, the unconscious inmate might have been intentionally injured by another inmate. While legally insufficient on its own, Defendant's strong record of rehabilitation weighs in favor of finding extraordinary and compelling circumstances.

Although the harsh conditions of confinement do not, on their own, constitute extraordinary and compelling reasons, courts have recognized that the pandemic has made "incarceration harsher and more punitive than would otherwise have been the case." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020); *see also United States v. Rengifo*, No. 9 Cr. 109, 2021 WL 5027334, at *14 (S.D.N.Y. Oct. 29, 2021) (finding that the "unanticipated severity" of lockdown conditions "constitutes another circumstance that" in combination with other factors collectively amounts to an extraordinary and compelling reason for early release). Here, in addition to harsh conditions that Defendant experienced prior to the pandemic, Defendant has most recently endured extended lockdowns, when he was confined to his cell for twenty-three hours a day, and limited to one ten-minute phone call per day. He has not seen his family in nineteen months due to visitor restrictions. Defendant suffers from obesity, chronic asthma, prediabetes and high cholesterol. While harsh conditions and the risk of

contracting COVID-19 are insufficient on their own, these factors weigh in favor of finding extraordinary and compelling reasons.

The substantial amount of time that Defendant has served also weighs in favor of a sentence reduction. *Brooker*, 976 F.3d at 238; *see also United States v. Vargas*, 502 F. Supp. 3d 820, 826-7 (S.D.N.Y. 2020) (collecting cases). The twenty-nine years Defendant has served is just punishment for the extremely serious offenses for which he was convicted. Defendant's life sentence is not in line with nationwide sentences for murder and other serious crimes. *See, e.g.*, *Graham v. Florida*, 560 U.S. 48, 93 (2010) (Roberts, J., concurring) (noting that a life without parole sentence was "far more severe than the average sentence imposed on those convicted of murder or manslaughter, who typically receive under 25 years in prison"); *United States v. Qadar*, No. 00 Cr. 603, 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021) (noting that the average federal murder sentence in fiscal year 2020 was approximately 21 years); *United States v. Cruz*, No. 3:94 Cr. 112, 2021 WL 1326851, at *13 (D. Conn. Apr. 9, 2021) (noting that in 1996, the average federal murder sentence was around 24.5 years and the median was around 22 years); U.S. Sentencing Comm., *Interactive Data Analyzer*, https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited May 9, 2022) (showing the median sentence length for murder for fiscal years 2015 through 2021 was 240 months, the median length of imprisonment was 240 months, the average sentence length was 262 months and the average length of imprisonment was 263 months).

The government argues that Defendant's rehabilitative efforts are inadequate. First, the government contends that Defendant fails to show remorse because he does not specifically acknowledge a particular murder and attempted murder, both of which were predicate acts for the RICO charge on which Defendant was convicted, as well as other murders perpetrated by the

8

Tellier Organization.  This argument is unavailing because such specific remorse is not required, and Defendant's remorse is sufficiently established in the record.  By all accounts, Defendant expresses deep regret for the decisions he made and suffering he caused.  He has expressed remorse in his letter to the court, to friends, family and current inmates, and uses his mistakes to guide others in the right direction.  Similar arguments regarding inadequate remorse have been rejected by other courts.  *See, e.g.*, *Fisher*, 493 F. Supp. 3d at 238 (rejecting government's argument that defendant did not express remorse for murder victims); *Rodriguez*, 492 F. Supp. 3d at 315 (declining to interpret certain of defendant's statements as indicating a lack of remorse in light of substantial evidence of remorse in letters).  The fact that Defendant did not express remorse at sentencing does not bear on the person he is today.

Second, the Government argues that many of Defendant's achievements, including his near spotless disciplinary record, are expected or at least typical of all inmates and are not extraordinary.  In doing so, the government discounts the realities of prison life, where "infractions may be issued for matters as small as a messy cell," *United States v. Underwood*, No. 88 Cr. 822, 2021 WL 3204834, at *4 (S.D.N.Y. Jan. 15, 2021) (internal quotation marks omitted), and that such a record is rare "especially for a defendant who, serving a life without parole sentence, has no motivation to earn good time credit by avoiding inappropriate conduct." *Cruz*, 2021 WL 1326851, at *13, *15 (granting defendant, who was serving life sentence for murder convictions, compassionate release).  Third, the cases the government cites in which motions for compassionate release were denied where the defendants were serving life sentences are distinguishable.  Unlike the instant case, the defendants in *Pizarro* and *Peña* were both convicted relatively recently and showed no remorse.  *United States v. Pizarro*, 17 Cr. 151, 2021 WL 517740, at *1-2 (S.D.N.Y. Feb. 11, 2021) (denying motion for compassionate release where

9

defendant was convicted in 2015 and had yet to accept responsibility or show "even a modicum of contrition"); *United States v. Peña*, No. 9 Cr. 341, 2020 WL 7408992, at *1, *7 (S.D.N.Y. Dec. 17, 2020) (denying motion for compassionate release where defendant was convicted in 2013 and trial evidence suggested that defendant was proud of committing the murders and had expressed no remorse). The defendant in *Colon* was viewed as posing a "severe threat" to other inmates in prison, in stark contrast to Defendant here. *United States v. Colon*, No. 3:97 Cr. 48, 2020 WL 6049215, at *7 (D. Conn. Oct. 12, 2020).

In sum, while Defendant's extraordinary rehabilitation, harsh prison conditions and lengthy imprisonment would alone be insufficient, together they present an extraordinary and compelling reason for Defendant's sentence reduction. *See, e.g.*, *Fisher*, 493 F. Supp. 3d at 235-6 (finding that the sum of Defendant's age, health conditions, particularized risk COVID-19 risk and exceptional rehabilitation efforts constituted extraordinary and compelling reasons); *Qadar*, 2021 WL 3087956, at *8 (finding that the combination of Defendant's medical conditions and effects of prolonged COVID lockdown, family circumstances, good character, rehabilitation, and prison accolades constituted extraordinary and compelling reasons).

### B. Sentencing Commission's Policy Statements and Section 3553(a) Factors

Defendant's release following twenty-nine years of imprisonment satisfies the goals of sentencing and factors stated 18 U.S.C. § 3553(a). Section 3553(a) provides that a sentence should be "sufficient, but not greater than necessary," and that courts must consider, among other factors, "(1) the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" (3) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant;" (4) "the

need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(1)-(2), (6); *see also Keitt*, 21 F.4th at 71. "[T]he weight to be afforded any § 3553(a) factor is a matter firmly committed to the discretion of the sentencing judge." *Keitt*, 21 F.4th at 72 (quoting *United States v. Verkhoglyad*, 516 F.3d 122, 131 (2d Cir. 2008)).

The first several factors under § 3553(a) are discussed above. The first subsection requires considerations of the nature and circumstances of the offense, along with the defendant's history and characteristics. All agree that Defendant was convicted of extremely serious crimes, including predicate acts of murder and attempted murder for purposes of RICO, which occurred in 1987 when Defendant was twenty-six years old. It is also undisputed that Defendant's conduct and rehabilitation since the offense have been laudable, as detailed above. The cases the government relies on in arguing that compassionate release has been denied for defendants whose crimes were less serious are distinguishable, as they involved defendants who have been incarcerated a comparatively brief period. *See United States v. Martin*, No. 18 Cr. 834-7, 2020 WL 1819961, at *1 (S.D.N.Y. Apr. 10, 2020) (defendant had been incarcerated since November 2018); *United States v. Butler*, No. 18 Cr. 834, 2020 WL 1689778, at *1 (S.D.N.Y. Apr. 7, 2020) (defendant had been incarcerated since January 2019); *United States v. Credidio*, No. 19 Cr. 111, 2020 WL 1644010, at *1 (S.D.N.Y. Apr. 2, 2020) (defendant appears to have been incarcerated for a little over a month). Although a decision to reduce a sentence is never taken lightly, courts have granted such motions where defendants' rehabilitation was extraordinary, even when the underlying conviction involved multiple or particularly violent

murders.  *See, e.g.*, *Underwood*, 2021 WL 3204834, at *1 (granting compassionate release motion where at least five, brutal murders were committed at defendant's direction); *United States v. Ramirez*, No. 98 Cr. 927, 2021 WL 5233512, at *1, *10 (S.D.N.Y. Nov. 10, 2021) (reducing forty-eight-year sentence by eight years where defendant was leader of drug trafficking organization and was personally involved in two murders); *Rodriguez*, 492 F. Supp. 3d at 308 (reducing sentence to thirty years where defendant participated in torture and murder of government informant).  As one court observed, Defendant's "history and characteristics did not freeze on the day of his arrest and incapacitation," and "'evidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors.'"  *Underwood*, 2021 WL 3204834, at *6 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)).  Here, Defendant's present-day characteristics and post-sentencing history weigh heavily in favor of release.

The second subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."  As discussed above, Defendant's almost three decades in prison has already served all of these purposes, particularly in comparison to sentences of others convicted of similar crimes.  *See United States v. Wong Chi Fai*, No. 93 Cr. 1340, 2019 WL 3428504, at *4 (E.D.N.Y. July 30, 2019) ("[N]otwithstanding the seriousness of [defendant's] criminal conduct," the sentence served (twenty-six years of a life sentence) appropriately "reflect[s] the seriousness of the offense," "promote[s] respect for the law" and "provide[s] just punishment for the offense." (alterations in original)).

The third subpart of § 3553(a) recognizes "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."  This consideration is consistent with

the Sentencing Guidelines policy statement that certain sentence reductions should be accompanied by the court's finding that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). At sentencing, Judge Cederbaum was particularly concerned with the fact that Defendant "[was] a leader who induced many young men to follow [his] example" and that "society must be protected" from Defendant in light of the "serious harm" inflicted "on many other human beings." Here, it is undisputed that Defendant has not engaged in a single act of violence since he was incarcerated. To the contrary, the BOP Progress Report and letters submitted by inmates describe Defendant as a productive and compassionate inmate who is committed to personal growth and serving his community. Defendant's age, near spotless disciplinary record and strong support from family and friends, all strongly suggest that he is unlikely to recidivate. *See* U.S. Sentencing Comm., The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf (last visited May 9, 2022); *see also United States v. Piggott*, No. 94 Cr. 417, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2020) ("It is also well-established that recidivism decreases significantly with age."); *United States v. Bass*, 462 F. Supp. 3d 176, 189 (N.D.N.Y. 2020) (citing to the Sentencing Commission's guidelines to support the unlikelihood of defendant's recidivism given his advanced age, and noting defendant's "mostly clean disciplinary record from his time in prison" and that defendant's ability to "largely follow[ ] the rules while incarcerated suggests that he will do so once released, which minimizes the danger he poses to the community"); *United States v. Scott*, 239 F. Supp. 3d 629, 635 (E.D.N.Y. 2017) ("[Defendant's] strong family support and good job prospects make recidivism unlikely.").

The fourth sub-part of § 3553(a) addresses "the need for the sentence imposed . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." The sentence served has already accomplished this end, as Defendant has furthered his educational and vocational training, including by completing his GED, a paralegal program, over forty vocational programs and hundreds of hours in religious courses. The letters and BOP Progress Report show that Defendant has taken full advantage of the educational and vocational opportunities offered in prison.

Finally, reducing Defendant's sentence will achieve the aim of the fifth sub-part of § 3553(a), "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As noted above, Defendant has already served a sentence that is longer than the average time for murder or manslaughter. A reduction would not create a disparity among co-defendants as all but one of Defendant's co-defendants have been released, with the exception of his brother, who was implicated in additional murders and whose other factual circumstances are not before the court.

## IV. CONCLUSION

For the foregoing reasons, the Court INDICATES that, if it had jurisdiction, it would grant Defendant's motion for a sentence reduction to time served with appropriate restrictive and monitoring conditions to be determined after a hearing. Defendant's counsel is instructed to so notify the Clerk of Court for the Second Circuit.

In the event the Second Circuit issues a mandate to return jurisdiction to this Court, Defendant shall file a motion for a ruling, which shall be accompanied by a detailed written reentry plan after consultation with the U.S. Probation Office. The Clerk of Court is respectfully directed to close the motion at Docket No. 492.

Dated: May 10, 2022
       New York, New York

                                            LORNA G. SCHOFIELD
                                     UNITED STATES DISTRICT JUDGE